UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

THOMAS UHLIG,

Plaintiff,

v.                    4:11-cv-145

FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of the business and property of DARBY BANK & TRUST CO., DRAYPROP, LLC, DRAYPARK, LLC, MICHAEL BROWN, REUBEN CROLL, and MARLEY MANAGEMENT, INC.,

Defendants.

## ORDER

### I. INTRODUCTION

Before the Court is Defendant Federal Deposit Insurance Corporation's ("FDIC-R") motion for summary judgment. *See* Doc. 16.

### II. FACTS

On February 8, 2010, Plaintiff Thomas Uhlig ("Uhlig") filed this lawsuit in state court against Defendants Darby Bank & Trust Co. ("Darby Bank"), Drayprop, LLC, Draypark, LLC, Michael Brown, Reuben Croll, and Marley Management, Inc. (collectively, "Defendants"), arising from the purchase of two Drayton Towers units in Savannah, Georgia. *See* Doc. 1-2 at 2-10.

Uhlig claims that, in purchasing the two units, he relied upon Defendants' representations regarding the completion of infrastructure for the Drayton Towers project. *See id.* at 4.

Uhlig claims that he relied upon a statement within a letter written by Salita R. Hill ("Hill"), formerly the Vice-President of Darby, to Mr. Richard Mopper of Mopper-Stapen Realtors in May 2005. *See* Doc. 17-1 at 13. The letter confirmed "that Darby Bank & Trust Company will guarantee the availability of funds up to the amount of $1,500,000.00." *Id.* The letter further stated that "should Drayprop, L.L.C. fail to perform in the specified time period ending March 1, 2006, the remaining funds will be released as necessary to the Drayton Tower Condominium Association to complete items as required." *Id.* According to Uhlig, this letter was incorporated into Uhlig's closing. *See* Doc. 17-1 at 7. The letter is signed only by Hill, and was not reviewed or approved by anyone else at Darby prior to its issuance. *See id.* at 13, 15, 17.

Uhlig further alleges that Darby Bank mishandled these funds, and that Uhlig incurred damages as a result of Darby's misfeasance and the incomplete state of the Drayton Towers infrastructure. *See* Doc. 1-2 at 5.

Uhlig avers that work remains largely incomplete and that no funds were ever released. *See* Docs. 1-2 at 4-5; 20 at 2.

On November 12, 2010, the Georgia Department of Banking and Finance closed Darby Bank, took possession of it, and appointed the FDIC as Darby Bank's receiver. *See* Doc. 1 at 2. After a brief return to state court, the case is back before this Court with the FDIC having been

substituted as a party for Darby Bank. *See* Docs. 12; 15.

## III. ANALYSIS

The FDIC-R has moved for summary judgment as to all of Uhlig's claims pending against it. *See* Doc. 16.

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on summary judgment, the Court views the facts and inferences from the record in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Cntys.*, 941 F.2d 1428, 1437 (11th Cir. 1991).

"The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotation marks removed).

The nonmoving party then "may not rest upon the mere allegations or denials of the [nonmoving] party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Gonzalez v. Lee Cnty. Hous. Auth.*, 161 F.3d 1290, 1294 (11th Cir. 1998). "A factual dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Four Parcels*, 941 F.2d at 1437 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material only if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248.

### B. *D'Oench* and § 1823(e)

The FDIC-R contends that Uhlig's claims are precluded by 12 U.S.C. §§ 1823(e) and 1821(d)(9)(A) because they are not based upon a fully executed, properly documented agreement that constitutes an official record of Darby Bank. *See* Doc. 17 at 6. Uhlig bases his claims against Darby entirely upon the Hill letter. *See* Doc. 17-1 at 7.

In *D'Oench, Duhme & Co. v. FDIC*, the Supreme Court held that a securities dealer, who executed a demand note with a bank that was subsequently acquired by the FDIC, could not keep the FDIC from enforcing the agreement. 315 U.S. 447, 459, 461-62 (1942). The Court held that a secret, unrecorded agreement could not operate as a defense against the FDIC's lawsuit. *See id.*

Current application of the *D'Oench* doctrine "depends upon whether the purported agreement relied upon by the private party was ever memorialized in writing or otherwise made explicit such that . . . the FDIC would have knowledge of the bank's obligations during an evaluation of the bank's records." *FDIC v. McCullough*, 911 F.2d 593, 600 (11th Cir. 1990).

*D'Oench* applies when the FDIC acts as a receiver. *See Murphy v. FDIC*, 208 F.3d 959, 963 (11th Cir. 2000).

*D'Oench*'s statutory complement is codified at 12 U.S.C. § 1823. This section provides:

> No agreement which tends to diminish or defeat the interest of [the FDIC] in any asset acquired by it . . . as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—(A) is in writing, (B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e)(1). In the context of section 1823(e)(1)(B), "executed" means "signed." *See Twin Const., Inc. v. Boca Raton, Inc.*, 925 F.2d 378, 384 (11th Cir. 1991).

The burden of establishing that an agreement satisfies § 1823(e)(1)'s requirements lays with the party claiming the adverse interest. *See, e.g., FDIC v. Oldenburg*, 34 F.3d 1529, 1551 (10th Cir. 1994); *Hanson v. FDIC*, 13 F.3d 1247, 1253 (8th Cir. 1994); *see also FDIC v. Gulf Life Ins. Co.*, 737 F.2d 1513, 1516 (11th Cir. 1984).

12 U.S.C. § 1821(d)(9) states that "any agreement which does not meet the requirements set forth in section 1823(e) of this title shall not form the basis of, or substantially comprise, a claim against the receiver or the [FDIC]."

"[C]ourts have found the aims of section 1823(e) and *D'Oench* identical and thus have construed defenses premised upon section 1823(e) and *D'Oench* in tandem." *Twin Const.*, 925 F.2d at 382.

Applying *D'Oench* and § 1823(e) in tandem, the Court determines that Uhlig cannot bring his claims against the FDIC-R. In order for a writing to be enforceable against the FDIC-R, the writing must be executed (signed) by *both* the depository institution and the interested party. *See* 12 U.S.C. § 1823(e)(1)(B). Uhlig did not sign the writing upon which he bases his claims. The undisputed evidence in the record indicates that the letter was neither approved by Darby Bank's board of directors nor recorded in any minutes. *See* Doc. 17-1 at 15, 17; *see also* 12 U.S.C. § 1823(e)(1)(C)-(D) (requiring board approval and minute recordation). Finally, there is no evidence even suggesting that the letter was an official record. *See* 12 U.S.C. § 1823(e)(1)(D) (mandating official recordation). There is simply no evidence in the record indicating that the FDIC-R would have knowledge of the Hill letter during an evaluation of Darby Bank's records as *D'Oench* requires.

Uhlig bore the burden of proving that the Hill letter satisfied § 1823(e)(1). Uhlig has not carried this burden. Hence, the Hill

3

Letter is not enforceable against the FDIC-R.

Uhlig contends that § 1823(e)(1) will not bar his claims after he voluntarily amends his complaint to comply with the parameters of an insurance policy maintained by Darby Bank . *See* Doc. 20 at 3-4. He claims that enforcing the letter against Darby Bank and the FDIC-R will not "diminish or defeat" the FDIC-R's interest in Darby Bank because the insurance company will pick up the tab. *See* Doc. 16-2 at 13-14; *see also* 12 U.S.C. § 1823(e)(1).

Congress's use of the word "tends" demonstrates the needlessness of an exact determination of whether the FDIC-R's interest in a particular asset is diminished or defeated in each case. Enforcement of a promise to make $1,500,000 available would certainly "*tend*[] to diminish or defeat the interest" of the FDIC-R, regardless of whether the FDIC-R would see an actual diminution in value of its assets in this case. Because a tendency to defeat or diminish is all that is required for application of the statute, a precise computation of the FDIC-R's net loss or gain in a particular case is unnecessary. *See, e.g., Talmo v. FDIC*, 782 F. Supp. 1538, 1540 (S.D. Fla. 1991) (looking at type of agreement and considering its tendency to diminish rights generally, not its actual diminution of the FDIC's interest in that particular case). Thus, Uhlig's argument is unpersuasive.

Uhlig also argues that his claims are based on both the Hill letter and a loan agreement between himself and Darby Bank. *See* Doc. 20 at 4-5. This argument, however, conflicts with Uhlig's interrogatory answer that identifies the letter as the sole source of Uhlig's grievance. *See* Doc 17-1 at 7 ("Please identify with specificity each and every representation made by this defendant to Plaintiff upon which you relied as alleged in Count I of your Complaint. Response: The representations were made in this case by Defendant in its letter to Mopper Stapen of May 20, 2005, which was incorporated into Plaintiff's closing and representations made by Mssrs. Brown and Mopper 'parrotting' the letter of May 20, 2005.").

Uhlig then indicates that the record is unclear as to whether the Hill letter and the loan agreement satisfy the requirements of § 1823(e)(1). *See* Doc. 20 at 4. According to Uhlig, § 1823(e)(1)'s applicability in this case involves questions of fact that are not appropriate for summary judgment. *See id.*

Uhlig's argument ignores the principle that the burden of satisfying § 1823(e)(1)'s requirements belongs to him. *See, e.g., Oldenburg*, 34 F.3d at 1551; *Hanson*, 13 F.3d at 1253. Uhlig has not presented evidence sufficient to fall within § 1823(e)(1)'s exception. Uhlig's failure to meet his burden is fatal to his claims against the FDIC-R.

Therefore, *D'Oench* and § 1823 operate to bar Uhlig's claims against the FDIC in its capacity as receiver. Uhlig's claims against the FDIC-R are **DISMISSED**.

### C. Equitable Relief and Punitive Damages

The FDIC-R also requests that the Court dismiss any claims for equitable relief or punitive damages that are pending against the FDIC-R. 12 U.S.C. § 1821(j) provides

4

that "no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver." 12 U.S.C. § 1825(b)(3) provides that the FDIC-R, "shall not be liable for any amounts in the nature of penalties."

Upon reviewing the complaint, the Court determines that Uhlig seeks neither punitive damages nor equitable relief against the FDIC-R. Accordingly, the Court need not pursue the FDIC-R's request further.

### IV. CONCLUSION

The FDIC-R's Motion for Summary Judgment is **GRANTED**. Uhlig's claims against FDIC-R are **DISMISSED**. Uhlig's claims against Drayprop, LLC, Draypark LLC, Michael Brown, Reuben Croll, and Marley Management, Inc. remain pending.

This 4th day of January 2012.

*/s/ B. Avant Edenfield*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

5